UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CHESTER,<br><br>  Petitioner,<br><br>  v.<br><br>WARDEN, USP-ATWATER,<br><br>  Respondent. | Case No.  1:22-cv-01368-HBK (HC)<br><br>OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS[1]<br><br>(Doc. No. 7) |

Petitioner Jerry Chester, a federal prisoner, has pending a pro se petition for writ of habeas corpus filed under 28 U.S.C. § 2241. (Doc. No. 1, "Petition"). The Petition raises two grounds for relief in connection with a prison disciplinary hearing conducted while Petitioner was incarcerated at the United States Penitentiary ("USP") Victorville: "(1) [Bureau of Prisons ("BOP")] processes violated his due process rights; and (2) such violation resulted in his prison sentence being unconstitutionally lengthened by virtue of losing 41 days good conduct time." (*Id*. at 1). In response, on January 17, 2023, Respondent filed a Motion to Dismiss with Appendix. (Doc. Nos. 7, 7-1). Respondent argues Petitioner's claims are without merit and his due process rights were not violated. (Doc. No. 7). Petitioner has not filed a response to the motion, nor requested an extension of time to respond, and the time for doing so has expired. (*See* Doc. No. 4

---

[1] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 9).

at ¶ 4, advising Petitioner that he has twenty-one (21) days to file a response if Respondent files a motion to dismiss). For the reasons set forth more fully below, the Court grants Respondent's Motion to Dismiss and denies Petitioner relief on his Petition.

## I. BACKGROUND

Petitioner is serving a 264-month federal prison sentence for his 2015 plea-based conviction in the United States District Court for the Northern District of Georgia ("NDGA") for conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). *See United States v. Beeks et al.*, No. 1:09-cr-00320-TCB-JKL, Crim. Doc. Nos. 426, 429-30.[2] In June 2021, while Petitioner was residing at USP-Victorville, an Inmate Investigate Report ("IR") determined that the mailroom at Victorville began receiving hardcover books beginning in April 12, 2021, that were addressed to various inmates, all of which had hidden compartments that were filled with Suboxone and Synthetic Marijuana. (Doc. No. 7-1 at 92). "During the course of [the] investigation, it was determined that [Petitioner] was coordinating the introduction of narcotics into the institution" as verified by both emails and phone calls in which Petitioner and another inmate ascertained tracking numbers for packages containing narcotics subsequently intercepted by the Victorville mail room. (*Id*. at 92-95). On October 19, 2021, Petitioner received a rewritten IR[3] for introducing illicit drugs into a BOP facility in violation of BOP Code 111A and abuse of prison mail services in violation of BOP Code 196. (*Id*. at 30-33). After Petitioner was provided with the IR, the matter was referred to Petitioner's Unit Discipline Committee ("UDC"), and the UDC upheld the charge and referred for a Discipline Hearing Officer ("DHO") Report. (*Id*. at 74). During this process, Petitioner was advised of his rights, confirmed his receipt of the IR, and confirmed his staff representation at the disciplinary hearing. (*Id*. at 33, 74). Officials provided Petitioner with an opportunity to make a statement at the UDC proceedings, but he elected to submit a written statement. (*Id*. at 65-72).

---

[2] The undersigned cites to the record in Petitioner's underlying NDGA criminal case as "Crim. Doc. No. _.".

[3] The record includes an "advisement of incident report delays" to ensure the inmate's due process rights were not violated. The advisement indicated the UDC hearing would not be conducted within 5 workdays of the reporting officer becoming aware of the incident because, in part, the DHO requested a rewrite of the incident report. (Doc. No. 7-1 at 63).

2

On November 3, 2021, a disciplinary hearing was convened. Petitioner appeared at the hearing, stated he received a copy of the IR, elected not to call witnesses, and elected to rely on his written statement as documentary evidence. (*Id*. at 78-79). His staff representative stated that Petitioner believed "mistakes were made during the investigation and that a total of seven books arrived. Though five books were in his name, he states that the other two books did not belong to him and could have contained the drugs." (*Id*. at 78). The hearing officer found Petitioner guilty of introducing illicit drugs into a BOP facility based on the following evidence: the officer's written report; Petitioner's written and oral statements at the UDC and DHO hearings; the SIS investigative report; the memorandum by Acting Chief Pharmacist C. Madrigal identifying the confiscated strips as Suboxone; evidence photos; and TRULINCS e-mail messages. (*Id*. at 80-84). Petitioner was assessed 41 days disallowed good conduct time, 41 days of disciplinary segregation, and loss of email privileges for six months. (*Id*. at 85).

Petitioner filed a prison appeal contending that his due process rights were violated because a "certified technician" did not conduct Narcotic Identification Kit ("NIK") Polytesting for confirmation that the "orange colored film substance identified by Acting Chief Pharmacist G. Madrigal" was Suboxone pursuant to "established BOP policy." (Doc. No. 7-1 at 27). In response to the appeal, the reviewer after investigating Petitioner's allegations determined them to be without merit; specifically, "[c]ontrary to [Petitioner's belief, a pharmacist is allowed to identify a substance as Suboxone and staff are not required to retest the substance via NIK Polytesting when this is done." (*Id*.). The reviewer reasonably found Petitioner guilty based on the greater weight of evidence, including the account of the reporting staff member who conducted the investigation, the documentary evidence, and the lack of evidence presented by Petitioner to exonerate himself of the charge. (*Id*.). At the next level of review, the appeal was similarly denied because the substance "was identified by the pharmacist as Suboxone and no additional testing was required; and the DHO's decision was reasonable and supported by the evidence." (*Id*. at 19).

Petitioner argues his due process rights were violated under *Wolff* v. *McDonnell*, 418 U.S. 539 (1974) because (1) the IR "did not provide him with specific evidence proving that the strips

3

were properly tested in accordance to BOP's NIK testing procedure"; (2) the Acting Chief Pharmacist did not indicate that he or she used NIK testing before identifying the confiscated substance as Suboxone; (3) the DHO's findings were not supported by "some evidence" because the substances were not properly tested; and (4) Petitioner's prison sentence was unconstitutionally lengthened by losing 41 days of good conduct time as a result of the DHO's finding. (Doc. No. 1 at 4). Respondent argues Petitioner waived any argument regarding NIK testing because it was not raised at the hearing, and regardless, his argument is without merit because the DHO "may properly rely on pharmacist [sic] illicit drug finding conclusions based on NIK testing" to support the disciplinary findings. (Doc. No. 7 at 5-7).

## II. APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

At the outset, a challenge to the execution of a sentence by a federal prisoner, as opposed to the imposition of a sentence, is properly brought under 28 U.S.C. § 2241. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (*per curiam*). Thus, government action that affects the duration of a prisoner's sentence, such as a loss of good time credits following a disciplinary proceeding, are properly brought via § 2241. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).[4] Here, Petitioner seeks

---

[4] However, in dicta, the Supreme Court, stated the award of good time credit by the Bureau of Prisons (BOP) under 18 U.S.C. § 3624(b) "does not affect the length of a court-imposed sentence; rather it is an administrative reward to provide an incentive for prisoners to 'compl[y] with institutional disciplinary

restoration of 41 days of lost good time credits for the challenged offense.  (Doc. No. 1 at 8).

**A.  Due Process Claims**

*Wolff* establishes the minimum due process that must be afforded to prisoners during prison disciplinary hearings.  *See Wolff* v. *McDonnell*, 418 U.S. 539 (1974) ("[D]ue process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits.").  Due process requires: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  *Id.* at 563-567.  Prisoners bear the burden to demonstrate that they did not receive due process during their disciplinary hearing.  *See Parnell v. Martinez*, 821 Fed. Appx. 866, 866-867 (9th Cir. 2020) (finding that the district court "properly dismissed [the petitioner's] due process claim challenging his disciplinary hearing following his failure to submit to a urinalysis because [the petitioner] failed to allege facts sufficient to demonstrate that he was not afforded all the process that was due.").

Moreover, "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record."  *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985) (quoting *Wolff*, 418 U.S. at 558) (emphasis added).  The court need not reexamine the entire record, assess the credibility of the witnesses, or weigh the evidence presented during the hearing.  *See id.* at 455-56.  Rather, the court determines whether there is "*any* evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* (emphasis added).

Petitioner contends his due process rights were violated because the IR "lacked proof that

---

regulations."  *Pepper v. United States*, 562 U.S. 476, 502, n. 14 (2011) (internal quotations and citations omitted).

5

1  the strips were tested in full compliance with BOP's NIK's testing procedure" and he was
2  therefore unable to prepare a proper defense; and the DHO relied on an "unauthorized"
3  pharmacist's "visual examination of the strips seized, and the pharmacists boilerplate statements
4  that he/she identified the strips as Suboxone," however, the pharmacist's memorandum did not
5  state how he or she "arrived at the conclusion of identifying the orange strips as Suboxone, and at
6  no time the IR or the DHO provided any information as to which staff performed the NIK test, if
7  one was done, and whether the NIK test was performed in the sequential order as required."
8  (Doc. No. 1 at 4-7). Plaintiff claims that without "proper" NIK testing by "authorized staff" the
9  evidence should be "deemed inappropriate and inadmissible" for consideration by the DHO, and
10 absent this evidence the DHO's finding is not supported by some evidence. (*Id*. at 7-8).
11     As an initial matter, a plain reading of the BOP program statements provided by Petitioner
12 do not support his argument that BOP officials did not comply with NIK "testing procedures."
13 (*See id*. at 5). BOP Program Statement 6060.08, as cited by Petitioner, indicates that "each
14 Captain will ensure the institution maintains a supply of Narcotic Identification Kits (purchased
15 through the Federal Supply Schedule) to determine the identity of unknown substances" and "all
16 lieutenants will be proficient in using [NIK] and ordinarily are responsible for testing unknown
17 substances." (*Id*. at 17); *see* BOP Program Statement 6060.08, *Urine Surveillance and Narcotic*
18 *Identification* (updated Mar. 8, 2001), *available at*
19 https://www.bop.gov/policy/progstat/6060_008.pdf. Contrary to Petitioner's arguments, and
20 commensurate with the reviewer's findings on appeal, the cited Program Statements do not
21 require that NIK testing be performed, nor do they dictate that such testing must be conducted by
22 a lieutenant as opposed to a pharmacist. (*Cf. id*. at 5; *See* Doc. No. 7-1 at 27 ("[c]ontrary to
23 [Petitioner's] belief, a pharmacist is allowed to identify a substance as Suboxone and staff are not
24 required to retest the substance via NIK Polytesting when this is done.")). Moreover, "[a] habeas
25 claim cannot be sustained based solely upon the BOP's purported violation of its own program
26 statement because noncompliance with a BOP program statement is not a violation of federal
27 law." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011).
28     In the instant case, the DHO report specifically relies on supporting memorandum

provided by Acting Chief Pharmacist C. Madrigal indicating he was presented with a hardcover book addressed to Petitioner that had approximately 100 orange strips concealed under the book binding, and the chief pharmacist "identified the orange strips (with the imprint A8 and 8) as Suboxone (Buprenorphine/Naloxone) 8mg/2mg sublingual strips." (Doc. No. 7-1 at 81). It is widely held that an inmate does not have a constitutional right to an additional drug test to verify the results of an initial positive test. *White v. Stansil*, 2016 WL 4009954, at *6 (E.D. Cal. Jul. 25, 2016) (collecting cases); *Williams v. Johnson*, 2017 WL 2469980, at *6 (C.D. Cal. Apr. 28, 2017) (petitioner did not explain how testing may have been faulty and "speculation does not equate to a substantive due process violation"); *Harris v. Blanckensee*, 2022 WL 704061, at *4-5 (D. Ariz. Mar. 9, 2022), *adopted in relevant part in* 2022 WL 1102634 (D. Ariz. Apr. 13, 2022) (*Wolff* requirements met when DHO relied in part on staff pharmacist's report that "medication strips" contained suboxone). Thus, regardless of Petitioner's unfounded claims that the USP-Victorville officials did not adhere to BOP guidelines by having a pharmacist test the confiscated strips, he offers no evidence that the testing was faulty, and mere speculation "does not support a claim of due process error or even undermine the conclusion / finding of illicit drugs." (Doc. No. 7 at 6).

        Finally, Petitioner presents no evidence that the prison disciplinary procedures did not meet due process standards under *Wolff*. Petitioner was notified of his rights before the DHO hearing, appeared at the hearing, declined his opportunity to present evidence and call witnesses, and he was notified in writing of the DHO's findings. *See Wolff*, 418 U.S. at 563-67. The DHO relied on evidence to find Petitioner guilty of the charged offense, including the officer's written report; Petitioner's written and oral statements at the UDC and DHO hearings; the SIS investigative report; the memorandum by Acting Chief Pharmacist C. Madrigal identifying the confiscated strips as Suboxone; evidence photos; and TRULINCS e-mail messages. (Doc. No. 7-1 at 80). It is not for this Court to reexamine the record, independently assess credibility, or reweigh the evidence before the DHO. *See Hill*, 472 U.S. at 455-56. The record before the Court contains "some evidence" to support the DHO's conclusion, and due process requirements were met under *Wolff*.

        Based on the foregoing, the Court finds no due process violation in connection with the

challenged DHO findings.  The Court finds the Petition is without merit and denies Petitioner any relief.

Accordingly, it is **ORDERED**:

1. Respondent's Motion to Dismiss (Doc. No. 7) is **GRANTED**.
2. The Petition (Doc. No. 1) is DENIED as without merit and Petitioner is denied any relief on his Petition.
3. The Clerk of Court shall enter judgment and close this case.

Dated:   July 27, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE